**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

State of Texas,

       *Plaintiff*,

v.

U.S. Department of Justice *et al.*,

       *Defendants*,

and

City of Baltimore, MD; City of Columbus, OH; City of New Haven, CT; and Centro Legal de la Raza,

       *Movant-Intervenors*.

Case No. 7:26-CV-00070-O

**MEMORANDUM IN SUPPORT OF MOVANT-INTERVENORS'
EMERGENCY MOTION TO INTERVENE**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ........................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

I.      The Administrative Closure Rule ............................................................... 2

II.     The Parties Reached a Collusive Settlement ............................................... 4

III.    Proposed Intervenors Are Injured by the Collusive Agreement........................ 5

        A.      The Cities................................................................................... 5

        B.      Centro Legal de la Raza............................................................... 6

ARGUMENT.................................................................................................................. 6

I.      Proposed Intervenors Have Article III Standing............................................ 7

II.     Proposed Intervenors are Entitled to Intervention as of Right Under Rule 24(a)(2) ........ 11

        A.      The motion is timely. .................................................................. 12

                1.      Proposed Intervenors filed this motion expeditiously ............................. 12

                2.      The Parties will not be prejudiced by this expeditious intervention......... 13

                3.      Proposed Intervenors will suffer extreme prejudice absent
                        intervention ...................................................................... 14

                4.      Unusual circumstances call for intervention.......................................... 14

        B.      Proposed Intervenors have substantial interests in this action............................. 14

        C.      Proposed Intervenors' ability to protect their substantial interests will be
                impaired absent intervention............................................................. 15

        D.      Defendants have not represented Proposed Intervenors interests........................ 15

III.    Intervention Would Not Be Futile ............................................................. 15

        A.      The Court lacks jurisdiction over this action. ....................................... 16

        B.      The INA does not prohibit administrative closure................................ 18

        C.      The consent decree improperly evades DOJ's rulemaking obligations
                under the APA................................................................................. 21

i

D.    The consent judgment exceeds the scope of permissible relief. ........................... 23

CONCLUSION .................................................................................................................. 25

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1 (D.D.C. 2013) ............................................. 23

*Amica Center for Immigrant Rights v. EOIR*, 1:26-cv-00696 (D.D.C. filed Mar. 4, 2026) ...................................................................................................................... 18

*Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113 (3d Cir. 2021) ...................................................... 19, 20

*Arizona v. City & Cnty. of S.F.*, 596 U.S. 763 (2022) ............................................................. 1, 21

*Brumfield v. Dodd*, 749 F.3d 339 (5th Cir. 2014) ........................................................................ 14

*Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267 (2022) ..................................... 13

*Centro Legal de la Raza v. EOIR*, 524 F. Supp. 3d 919 (N.D. Cal. 2021) ..................................... 6

*Centro Legal de la Raza v. EOIR*, No. 3:21-cv-00463 (N.D. Cal.) ................................................. 6

*Ceres Gulf v. Cooper*, 957 F.2d 1199 (5th Cir. 1992) ................................................................. 12

*Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339 (1892) ..................................................... 16, 17

*City & Cnty. of S.F. v. USCIS*, 992 F.3d 742 (9th Cir. 2021) ....................................................... 21

*City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) ........................ 14, 15

*Clarke v. CFTC*, 74 F.4th 627 (5th Cir. 2023) ............................................................................. 10

*Conservation Nw. v. Sherman*, 715 F.3d 1181 (9th Cir. 2013) .................................................... 22

*Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846 (5th Cir. 2022) ................................. 25

*Dep't of Comm. v. New York*, 588 U.S. 752 (2019) ..................................................................... 21

*Diaz v. S. Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970) ............................................................. 14

*Edwards v. City of Houston*, 78 F.3d 983 (5th Cir. 1996) ................................................ 11, 12, 13

*Ex parte McCardle*, 74 U.S. (7 Wall.) 506 (1868) ...................................................................... 18

*Exec. Bus. Media, Inc. v. U.S. Dep't of Defense*, 3 F.3d 759 (4th Cir. 1993) .............................. 22

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) .............................................................. 10

*Garcia-DeLeon*, 999 F.3d 986 (6th Cir. 2021) ............................................................................... 2

*Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414 (5th Cir. 2025) ............................. 15

*Hernandez-Serrano v. Garland*, 981 F.3d 459 (6th Cir. 2020) ....................................... 18, 19, 20

*In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792 (2d Cir. 2022) ...................................................................................................................... 16

*La Union del Pueblo Entero v. Abbott*, 29 F.4th 299 (5th Cir. 2022) ........................................... 15

*La. Fair Hous. Action Ctr. v. Azalea Garden Props.*, 82 F.4th 345 (5th Cir. 2023) .................... 10

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011) ............................................................................................................ 13, 14

*Lelsz v. Kavanagh*, 710 F.2d 1040 (5th Cir. 1983) ...................................................................... 14

*Lewis v. Casey*, 518 U.S. 343 (1996) .......................................................................................... 25

*Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501 (1986) ............. 18, 22

*Louisiana ex rel. Landry v. Biden*, 64 F.4th 674 (5th Cir. 2023) ................................................. 25

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ............................................................................. 7

*Mejia-Alvarenga v. Garland*, 95 F.4th 319, 326–27 (5th Cir. 2024) ........................................... 18

*Meza Morales v. Barr*, 973 F.3d 656 (7th Cir. 2020) .................................................................... 20

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010) ...................................................... 25

*Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47 (1971) ........................................... 16

*Muskrat v. United States*, 219 U.S. 346 (1911) ........................................................................... 16

*Nat'l Ass'n of Mfrs. v. U.S. Sec. & Exch. Comm'n*, 105 F.4th 802 (5th Cir. 2024) ..................... 24

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452 (5th Cir. 1984) ................................................................................................................................. 11

*Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92 (2015) ..................................................................... 21

*Pool v. City of Houston*, 87 F.4th 733 (5th Cir. 2023) .................................................................. 17

*Romero v. Barr*, 937 F.3d 282 (4th Cir. 2019) ............................................................................ 20

*Ross v. Marshall*, 426 F.3d 745 (5th Cir. 2005) .......................................................................... 13

*Saldano v. Roach*, 363 F.3d 545 (5th Cir. 2004) ......................................................................... 11

iv

*Sanchez v. R.G.L.*, 761 F.3d 495 (5th Cir. 2014) ................................................................ 11

*Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416 (10th Cir. 1984) ....................................... 15

*Sierra Club v. Espy*, 18 F.3d 1202 (5th Cir. 1994) ........................................................ 13

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................ 16

*Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977) .............................................. 12, 13, 14

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ........................................ 17

*Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) ........................................ 23

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ........................................ 11

*Texas v. United States*, 809 F.3d 134 (5th Cir. 2015) ........................................ 7

*Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433 (2017) ........................................ 7

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ........................................ 11

*Trump v. California*, No. 26A124 (U.S. filed July 27, 2026) ........................................ 25

*United Airlines, Inc. v. McDonald*, 432 U.S. 385 (1977) ........................................ 13

*United States v. Carpenter*, 526 F.3d 1237 (9th Cir. 2008) ........................................ 22

*United States v. Johnson*, 319 U.S. 302 (1943) ........................................ 16

*United States v. Texas*, 181 F.4th 548 (5th Cir. 2026) ........................................ 16

*United States v. Texas*, 599 U.S. 670 (2023) ........................................ 17

*Wyoming v. Oklahoma*, 502 U.S. 437 (1992) ........................................ 7

## **Statutes**

5 U.S.C. § 553 ........................................................................................................ 1

5 U.S.C. § 553(c) ........................................................................................................ 21

6 U.S.C. § 521 ........................................................................................................ 19

8 U.S.C. § 1101(a)(15)(U) ........................................................................................................ 8

8 U.S.C. § 1158(d)(5)(A)(iii) ........................................................................................................ 21

8 U.S.C. § 1184(p) ........................................................................................................ 5

8 U.S.C. § 1184(p)(1) ............................................................................................... 8

8 U.S.C. § 1229a ..................................................................................................... 21

8 U.S.C. § 1229a(c)(1)(A) ...................................................................................... 20

HSA § 1102, 116 Stat. 2135, 2274 ......................................................................... 19

INA § 103(g)(1), 8 U.S.C. § 1103(g)(1) ................................................................. 18

INA § 103(g)(1), 8 U.S.C. § 1103(g)(2) ................................................................. 19

INA § 103(g)(2), 8 U.S.C. § 1103(g)(2) ................................................................. 18

INA § 240, 8 U.S.C. § 1229a .................................................................................. 18

U.S.C. § 1101(a)(15)(U) ........................................................................................... 5

## Other Authorities

63 Fed. Reg. 27,823 (1998) .................................................................................... 20

64 Fed. Reg. 25756 (May 12, 1999) ....................................................................... 20

88 Fed. Reg. 62242 ................................................................................................. 19

*Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81,588 (2020) ....................................... 4

*Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46742 (2024) ................................................................................... 1, 3, 4, 24

Future Exercise of Executive Branch Discretion, 23 Op. O.L.C. 126 ......................... 22

Sirce E. Owen, Acting Dir., EOIR, *PM 25-29: Cancellation of Director's Memorandum 22-03* ...................................................................................... 1, 17

U.S. Dep't of Homeland Sec., *U Visa Law Enforcement Resource Guide* .................... 8

Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a), 114 Stat. 1464, 1533–34 .................................................................. 8

## Rules

8 C.F.R. § 1003.1(d)(1)(ii) ...................................................................................... 19

8 C.F.R. § 1003.1(*l*) ................................................................................................. 3

8 C.F.R. § 1003.1(*l*)(2) ............................................................................................ 3

8 C.F.R. § 1003.1(m) ...................................................................................................................... 3

8 C.F.R. § 1003.10(b) .................................................................................................................. 19

8 C.F.R. § 1003.18(b) .................................................................................................................... 3

8 C.F.R. § 1003.18(c) ..................................................................................................................... 2

8 C.F.R. § 1003.18(c)(3) ................................................................................................................ 3

8 C.F.R. § 1003.18(d) .................................................................................................................... 3

8 C.F.R. § 1003.29 ....................................................................................................................... 21

8 C.F.R. § 1214.2(a) ..................................................................................................................... 19

8 C.F.R. § 1214.3 .......................................................................................................................... 19

8 C.F.R. § 1245.13(d)(3)(i) .......................................................................................................... 19

8 C.F.R. § 1245.15(p)(4) .............................................................................................................. 19

8 C.F.R. § 245.13(d)(3)(i) ............................................................................................................ 20

8 C.F.R. § 245.15(p)(4) ................................................................................................................ 20

8 U.S.C. § 1103(g)(2) ..................................................................................................................... 3

C.F.R. § 1003.10(b) ..................................................................................................................... 19

Fed. R. Civ. P. 24(a)(2) ...................................................................................................... 6, 11, 15

**INTRODUCTION**

In April 2025, the Acting Director of the Executive Office for Immigration Review (EOIR) within the U.S. Department of Justice issued a policy memorandum criticizing one of the agency's published regulations. *See* Sirce E. Owen, Acting Dir., EOIR, *PM 25-29: Cancellation of Director's Memorandum 22-03*. Among other things, that regulation codified a decades-old EOIR practice of administratively closing immigration proceedings when doing so would promote administrative efficiency or protect the due process rights of participants. *See* Efficient Case and Docket Management in Immigration Proceedings, 89 Fed. Reg. 46742 (May 29, 2024) (the Final Rule). The Administrative Procedure Act (APA) prescribes the process through which an agency can rescind a binding regulation. *See* 5 U.S.C. § 553.  But rather than avail itself of that process—and subject any attempted recission of the Final Rule to the scrutiny of the notice-and-comment process—the United States instead embraced "rulemaking-by-collusive-acquiescence." *Arizona v. City & Cnty. of S.F.*, 596 U.S. 763, 766 (2022) (Roberts, C.J., concurring, joined by Thomas, Alito, & Gorsuch, JJ.). Texas challenged the Final Rule and the United States immediately conceded—flouting longstanding Department of Justice norms and forgoing available arguments that the United States routinely raises when confronted with similar challenges to federal regulations. Denied the benefit of adversarial presentation, this Court entered a consent judgment on the same day suit was filed, apparently vacating the Final Rule in its entirety—including provisions that do not even relate to administrative closure—and permanently enjoining the Department of Justice from adopting any future regulation authorizing administrative closure.

Proposed Intervenors, three municipalities (Baltimore, MD, Columbus, OH, and New Haven, CT) and one legal services provider (Centro Legal de la Raza), seek intervention of right to appeal that consent judgment. Each is concretely injured by the vacatur of the challenged regulation. The municipalities face classic pocketbook injuries because the increased deportations

1

that Texas has alleged will follow from termination of the administrative closure process will deprive them of tax revenue. The municipalities also face an array of other harms, including impairment of their law-enforcement efforts. One group of immigrants who will be disproportionately affected by the consent judgment are crime victims and witnesses, who will now face deportation before they can obtain immigration relief to which they are entitled, making them less willing to cooperate with law enforcement. Centro Legal, likewise, will face a significant drain on its resources and the consent judgment also revives a 2020 regulation that had been preliminarily enjoined in a suit brought by them (which was then dismissed when the 2020 regulation was superseded by the Final Rule at issue here).

The arguments that Proposed Intervenors intend to assert on appeal are also substantial. The parties were fully aligned and, thus, no case or controversy supplied this Court with Article III jurisdiction. Tactics to circumvent the APA, like those pursued here, have been a subject of repeated judicial criticism. And Proposed Intervenors have a substantial defense on the merits for the Final Rule: EOIR's administrative closure practice is longstanding and has support in decisions from several courts of appeals. Accordingly, intervention for purposes of appeal should be granted. And because the deadline for appealing from the consent judgment is August 21, 2026, the Proposed Intervenors respectfully ask the Court to resolve this motion before that date.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    The Administrative Closure Rule

Like federal courts, immigration courts have various tools to manage their crowded dockets efficiently. One tool, known as administrative closure, operates to suspend (or stay) removal proceedings in certain circumstances. *See, e.g.*, 8 C.F.R. § 1003.18(c) (defining administrative closure as the "temporary suspension of a case"). This practice is longstanding. *See, e.g., Garcia-DeLeon*, 999 F.3d 986, 989 (6th Cir. 2021) ("For at least three decades, immigration judges and

2

the [Board of Immigration Appeals (BIA)] regularly administratively closed cases."). In the Final Rule, EOIR used notice-and-comment procedures to codify the practice and adopt a regulatory framework governing administrative closure. DOJ relied on its rulemaking authority under the Immigration and Nationality Act, 8 U.S.C. § 1103(g)(2), to promulgate the Final Rule.

The Final Rule authorizes immigration judges and the BIA to administratively close cases under certain conditions. *See* 8 C.F.R. § 1003.18(c)(3); *id.* § 1003.1(*l*). One circumstance where administrative closure may be appropriate is if the noncitizen has a pending application for relief before U.S. Citizenship and Immigration Services (USCIS), a separate agency. In circumstances where relief granted by USCIS would "provide the noncitizen with legal status or some other basis that would prevent enforcing an order of removal, thus eliminating the need for further removal proceedings," administrative closure can promote efficiency by "reducing the immediate need to conclude removal proceedings, or otherwise narrowing the issues before EOIR." 89 Fed. Reg. at 46745. But even if a case is administratively closed, the adjudicator can recalendar the case (i.e., resume proceedings) upon a party's motion after weighing the relevant factors. 8 C.F.R. § 1003.18(b); *id.* § 1003.1(*l*)(2).

The Final Rule also adopted various other changes to immigration court and BIA procedures. One procedure, known as termination, allows for disposition of a case in certain circumstances, including where the noncitizen has obtained lawful status through a U visa.[1] *See* 8 C.F.R. § 1003.18(d); *id.* § 1003.1(m). Other provisions addressed the background check process for noncitizens, the setting of briefing schedules before the BIA, and the BIA's authority to reopen cases sua sponte, among other topics. 89 Fed. Reg. at 46743, 46766-67. Each of these other

---

[1] As described further below, U nonimmigrant status, commonly known as a U visa, is available to certain victims of qualifying crimes who are helpful to law enforcement in the investigation or prosecution of criminal activity. *See generally* 8 U.S.C. § 1101(a)(15)(U); *id.* § 1184(p); 8 C.F.R. § 214.14.

changes functioned independently from the provisions relating to administrative closure. *Id.* at 46786. As a result, the Department included an express severability clause indicating that if any portion of the "rule is stayed, enjoined, not implemented, or otherwise held invalid by a court," the other portions "should remain in effect." *Id.*

The Final Rule also largely rescinded an earlier EOIR regulation, 85 Fed. Reg. 81588 (Dec. 16, 2020) ("the 2020 Rule"). As discussed below, the 2020 Rule was preliminarily enjoined shortly after its issuance in a suit brought by Centro Legal. *See* 89 Fed. Reg. at 46742.

## II.     The Parties Reached a Collusive Settlement

Nearly two years after the Final Rule went into effect, Texas filed suit against DOJ and related defendants alleging that the Rule exceeds the agency's statutory authority. Compl., ECF No. 1. Texas did not even have to serve its lawsuit—and did not request any summonses with their complaint, or file an executed waiver of service; DOJ was ready and waiting. Hours later, the Parties filed a Joint Motion for Consent Judgment asking the Court to declare the Final Rule unlawful and vacate it, and to permanently enjoin Defendants and their officers both from enforcing the Rule and from promulgating similar regulations in the future. ECF No. 3.

In the absence of adversarial briefing, this Court promptly entered the Consent Judgment. That Order declares what the Court termed the "Administrative Closure Rule"—which the Court defined as the entire Final Rule, including those portions that do not relate to administrative closure—to be "in excess of statutory authority and contrary to law," and further declares that "no statute authorizes immigration judges to indefinitely administratively close or suspend adjudication of a case before them." ECF No. 5, at 1. The Consent Judgment also permanently enjoined Defendants from enforcing the Final Rule and from promulgating any regulation permitting immigration judges to administratively close proceedings "without reaching the merits of a case absent an express statutory basis to do so," and vacated the Rule in its entirety. *Id.* at 2.

4

### III.     Proposed Intervenors Are Injured by the Collusive Agreement

As a result of the Parties' collusive agreement to vacate the Final Rule and permanently enjoin immigration judges from administratively closing removal proceedings, Proposed Intervenors have felt and will imminently feel wide-ranging effects.

### A.     The Cities

Proposed Intervenors the City of Baltimore, Maryland; the City of Columbus, Ohio; and the City of New Haven, Connecticut, are local governments each with substantial immigration populations. Rodriguez Lima Decl. ¶ 5; Tobias-Hunter Decl. ¶¶ 7–10, Elicker Decl. ¶ 4. Texas avers that the relief it obtained in this suit will result in more deportations of noncitizens across the United States. That effect will predictably impair the cities' interests.

Each city works to investigate and prosecute crimes that occur within its jurisdiction, and therefore each has a significant law-enforcement interest in encouraging victims of crime (including undocumented individuals) to cooperate with police and prosecutors. Rodriguez Lima Decl. ¶ 15. One mechanism to encourage that cooperation is the U visa certification process. As noted, U visas allow undocumented individuals who are the victims of certain crimes and who significantly assist law enforcement to adjust their immigration status through petition with USCIS. 8 U.S.C. §§ 1101(a)(15)(U), 1184(p). The possibility of obtaining a U visa is a powerful incentive for crime victims to cooperate with law enforcement. Rodriguez Lima Decl. ¶ 16. But that incentive is significantly diminished if crime victims fear that they will be ordered removed in immigration court before USCIS approves their U visa petition. *Id.* ¶ 18. The Final Rule helps protect the integrity of the U visa process and, as a result, promotes cooperation with law enforcement.

The cities also have financial interests that the consent judgment will impair. Baltimore and Columbus collect city income taxes. Rodriguez Lima Decl. ¶ 9; Lewis Decl. ¶ 15. The consent

judgment will result in the increased deportation of city residents who would otherwise pay these taxes—indeed, that is the very premise of Texas's suit. *See, e.g.*, Compl. ¶¶ 99, 101 (alleging that vacatur of the Final Rule will increase deportations). The judgment also diminishes the value of city investments in removal-defense programs. *E.g.*, Rodriguez Lima Decl. ¶ 21.

### B.    Centro Legal de la Raza

Centro Legal is a legal services organization based in Oakland, California. Among other things, Centro Legal provides representation to noncitizens facing removal proceedings. Engen Decl. ¶ 4. Centro Legal represents upwards of 150 noncitizens with immigration court proceedings that have been administratively closed or terminated, including while those clients seek relief before USCIS. *Id.* ¶¶ 19, 25. Centro Legal relied on the Final Rule's administrative closure and termination procedures in accepting additional clients, and recalendaring of those closed or terminated cases would impose severe hardships on Centro Legal, its staff, and its clients. *Id.* ¶¶ 19–39. Moreover, Centro Legal was the lead plaintiff in a challenge to the 2020 Rule and obtained a preliminary injunction against that rule's enforcement. *See Centro Legal de la Raza v. EOIR*, 524 F. Supp. 3d 919 (N.D. Cal. 2021). The 2020 Rule remained enjoined until the 2024 Final Rule rescinded it, which rendered the *Centro Legal* litigation moot. The parties therefore stipulated to the dismissal of that case on the understanding that the 2020 Rule would not take effect. *See Centro Legal de la Raza v. EOIR*, No. 3:21-cv-00463 (N.D. Cal.), ECF No. 109.

## ARGUMENT

Proposed Intervenors are entitled to intervene of right under Federal Rule of Civil Procedure 24(a)(2) because they have a direct and substantial interest in the Final Rule and the nominal defendants have made no effort to protect that interest, choosing instead to actively seek the invalidation of their own regulation. Proposed Intervenors have moved promptly to protect their interests, filing this motion about six weeks after suit was filed and well within the period for

noticing a timely appeal. And Proposed Intervenors will assert substantial (indeed, meritorious) challenges to the Consent Judgment.

## I.   Proposed Intervenors Have Article III Standing

Proposed Intervenors can satisfy the requirements for standing to appeal from the Consent Judgment. Under Article III, a party must demonstrate (1) injury in fact, (2) causation, and (3) redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). It is sufficient if any one Intervenor establishes standing. *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017).

Proposed Intervenors Baltimore, Columbus, and New Haven face direct injury from the vacatur of the Final Rule. First, the judgment extinguishes identifiable revenue streams. Columbus levies a 2.5% income tax, and Baltimore has a 3.2% resident income tax. Rodriguez Lima Decl. ¶ 9; Lewis Decl. ¶ 15. Baltimore and Columbus residents whose immigration cases were paused— many of whom work legally while their applications are pending—now face reopened removal cases as those matters are recalendared. Rodriguez Lima Decl. ¶¶ 10, 21; Lewis Decl. ¶ 12–16. Each worker who is ultimately removed is a specific taxpayer whose payments the cities lose. Rodriguez Lima Decl. ¶ 9; Lewis Decl. ¶ 16. That is a loss of "specific tax revenues," not generalized economic harm. *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992); *Texas v. United States*, 809 F.3d 134, 158 (5th Cir. 2015) (relying on *Wyoming* to hold that costs imposed through effects on identifiable third parties support standing). Indeed, in this very suit, Texas has alleged that even a dollar of increased State spending resulting from delays in deporting non-citizens is sufficient to confer standing. Compl. ¶ 96. The same logic compels the conclusion that the cities have standing to protect their interest in tax receipts imperiled by the consent judgment.

Second, the judgment destroyed the value of public money spent well before this suit was filed. Baltimore has funded removal defense for its residents through Safe City Baltimore, which funds its legal service providers through fixed awards, with $2 million appropriated in 2025.

Rodriguez Lima Decl. ¶ 19. Those removal defense proceedings resulted in administrative closures obtained by city-funded counsel—since September 2025, the program's hotline placed more than 60 residents eligible for a U visa with legal service providers. *Id.* ¶ 20. Baltimore must now pay a second time to re-litigate cases they already paid to stabilize: "The City has already paid for the legal work that achieved those closures; when the cases reopen, that City-funded work is lost." *Id.* ¶ 21. And because those same fixed awards must now address simultaneous representation in parallel forums as removal proceedings go forward even as city residents are continuing to seek relief before USCIS, the providers will "exhaust their awards on fewer clients." *Id.* ¶ 22.

Third, the judgment imposes concrete costs on the cities' law-enforcement operations. Congress created the U visa because crime victims without immigration status fear coming forward, and it conditioned the visa on ongoing cooperation with police and prosecutors. Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, § 1513(a), 114 Stat. 1464, 1533–34 (findings that victims without status fear coming forward and that the visa exists to "strengthen the ability of law enforcement agencies to detect, investigate, and prosecute" these crimes); 8 U.S.C. § 1101(a)(15)(U). The cities regularly certify such victims as eligible for U visas,[2] who must cooperate with law enforcement throughout USCIS adjudications, which can take years. Rodriguez Lima Decl. ¶ 7; Tobias-Hunter Decl. ¶ 14. Baltimore alone identifies at least 600 pending or approved U visa applications, and its police department has processed more than 440 U visa certifications since the beginning of 2025. Rodriguez Lima Decl. ¶ 7. Administrative closure made the U visa program especially attractive because it relieved applicants from having to actively resist deportation efforts during potentially lengthy proceedings before USCIS.

---

[2] *See* 8 U.S.C. § 1184(p)(1) (requiring certification from, among other options, a "local authority investigating criminal activity"); *see generally* U.S. Dep't of Homeland Sec., *U Visa Law Enforcement Resource Guide*, https://www.uscis.gov/sites/default/files/document/guides/U_Visa_Law_Enforcement_Resource_Guide.pdf.

Rodriguez Lima Decl. ¶¶ 8, 10. But the Consent Judgment means that victims and witnesses have no such protection and may be deported while they could continue to be of critical assistance to law enforcement. When victims decline to come forward, withdraw from cooperation with law enforcement, or are removed mid-prosecution, cases fail and the perpetrator goes unprosecuted. Tobias-Hunter Decl. ¶ 17 ("offenders . . . go unprosecuted, and Columbus residents, citizen and noncitizen alike, are less safe"); Rodriguez Lima Decl. ¶ 18 ("The court's judgment will place more Baltimore residents—including crime victims and witnesses—in active removal proceedings . . . that is precisely the circumstance in which residents stop calling police, stop appearing in court, and stop seeking the law's protection."); Elicker Decl. ¶ 9.

Centro Legal is independently injured. As a result of the judgment, close to 100 of its administratively closed cases will be recalendared and return to active dockets—the vast majority of which are unaccompanied children who have asylum applications pending, who have been abused or neglected by their parents, or who have applied for or been granted Special Immigrant Juvenile Status, in addition to survivors of violent crimes with U visa petitions pending. Engen Decl. ¶¶ 16, 19. And at least 50 of its clients whose cases were terminated will be put back into recommended removal proceedings. *Id.* ¶ 19. Each recalendered or recommended proceeding will require approximately 40 to 200 additional hours of staff time. *Id.* Because Centro Legal's grants fund only a fixed ceiling of active matters, reopening these cases will force it to perform legal work on far more matters than any grant is sized to cover—work its funding contracts neither anticipate nor pay for. *Id.* ¶ 24. Centro Legal therefore suffers a pocketbook injury because it must expend additional resources with no corresponding funding to cover those expenditures. Recalendaring also destroys the value of work Centro Legal's funders already paid for: the very closures the judgment now unwinds. *Id.* And Centro Legal reasonably relied on the Final Rule when it dismissed its initially successful challenge to the 2020 Rule that was rescinded by the Final

9

Rule. Engen Decl. ¶¶ 41–42; *cf. Clarke v. CFTC*, 74 F.4th 627, 634–37 (5th Cir. 2023) (parties who relied on a no-action letter had standing to challenge the CFTC's rescission of that letter). A notice-and-comment rulemaking process would have afforded Centro Legal the opportunity to comment in opposition to this change. Engen Decl. ¶ 35.

For much the same reasons, the judgment "directly affects and interferes with" Centro Legal's "core business activities." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 395 (2024). Centro Legal operates a legal counseling and representation service, and roughly 130 to 150 cases in which it is counsel of record—whether through recalendared administrative closures or recommenced terminations—will return from administrative closure to active litigation as a direct consequence of the judgment. Engen Decl. ¶ 19. That will force it to abandon full-scope representation for limited-scope services, curtail its representation of monolingual speakers of Indigenous languages, and suspend new referrals from longtime community partners. *Id.* ¶¶ 32, 38, 39. Conduct that "concretely and 'perceptibly impair[s]'" an organization's service functions, with a consequent drain on its resources, is an injury in fact. *La. Fair Hous. Action Ctr. v. Azalea Garden Props.*, 82 F.4th 345, 351–52 (5th Cir. 2023) (citation omitted). In addition, recalendared cases put Centro Legal to the "Hobson's choice" of either terminating legal representation of existing clients or maintaining an unsustainable caseload. Engen Decl. ¶ 29.

Centro Legal's injury is compounded by concrete reputational harm. Over many years, Centro Legal has built a reputation as a reliable advocate for immigrants—a reputation on which its intake depends, since partners refer 50 to 100 clients to Centro Legal annually. Engen Decl. ¶¶ 31, 33. Because the recalendaring and recommencement of cases will leave Centro Legal "wholly unable to accept any new referrals" for an extended period, *id.* ¶ 32, its partner organizations will instead route clients to other providers they perceive as more reliable, *id.* ¶ 33, directly eroding Centro Legal's standing as a dependable referral partner. *See TransUnion LLC v.*

10

*Ramirez*, 594 U.S. 413, 425 (2021) (recognizing "reputational harms"). This will also contribute to Centro Legal's economic harm because funders weigh "an organization's relationship with other partners and reputation for reliability" in grant decisions. Engen Decl. ¶ 33.

These injuries are all caused by the Consent Judgment and can be redressed through successful defense of the Final Rule. Many of the cities' injuries necessarily follow from the factual assertions Texas has made it asserting its own standing. Likewise, recalendaring is the predictable consequence of vacatur—not speculation about the discretionary choices of absent third parties. And an order vacating or narrowing the judgment "could potentially lessen" every injury described above, which is all redressability requires. *Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014).

## II.     Proposed Intervenors are Entitled to Intervention as of Right Under Rule 24(a)(2)

A non-party has the right to intervene in an action pursuant to Federal Rule of Civil Procedure 24(a)(2) when it satisfies four conditions:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 463 (5th Cir. 1984).

The Fifth Circuit construes Rule 24(a) broadly to favor intervenors. *See Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004); *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) ("Federal courts should allow intervention where no one would be hurt and the greater justice could be attained."). The standard for intervention of right "is a flexible one, which focuses on the particular facts and circumstances surrounding each application." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (internal quotation marks and citations omitted). Proposed Intervenors meet each Rule 24(a)(2) factor and so should be granted intervention.

11

A.    **The motion is timely.**

Proposed Intervenors' motion is timely. There is no precise definition of timeliness for intervention. But the Fifth Circuit has set out four subfactors to guide the inquiry in *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977). Those subfactors are:

> (1) "The length of time during which the would-be intervenor actually know[s] or reasonably should have known of his interest in the case before he petitioned for leave to intervene," (2) "The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case," (3) "The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied," and (4) "The existence of unusual circumstances militating either for or against a determination that the application is timely."

*Id.* at 264–66. Whether a party seeks intervention before or after final judgment is "of limited significance" to timeliness. *Ceres Gulf v. Cooper*, 957 F.2d 1199, 1203 (5th Cir. 1992) (quoting *Stallworth*, 558 F.2d. at 266). Here, Proposed Intervenors meet each of *Stallworth* factors.

1.    **Proposed Intervenors filed this motion expeditiously**

Given the unusual nature of this case—a complaint and final judgment all filed in less than one day—Proposed Intervenors have filed this motion expeditiously. The relevant period "runs either from the time the applicant knew or reasonably should have known of his interest, . . . or from the time he became aware that his interest would no longer be protected by the existing parties." *Edwards*, 78 F.3d at 1000 (citing *Stallworth*, 558 F.2d at 264).

Here, those two dates are the same. Texas filed its action, the U.S. Department of Justice agreed to the relief sought, and the Court entered judgment all on June 22, 2026. Proposed Intervenors could only have been aware of their interest once the case was filed, and they learned conclusively that they would not be protected when DOJ agreed with Texas and sought a consent judgment. Proposed Intervenors file this motion on August 7, 2026, roughly six weeks after

12

learning of the matter and their interest. In *Stallworth* itself, the benchmark for timeliness, intervenors filed their motion just short of one month after entry of the consent order in question, and six weeks after they were affected by the order, 558 F.2d at 262, which the Court found "discharged their duty to act quickly." *Id.* at 267. *See also League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011) ("*LULAC*") (four weeks after entry of order modifying consent decree was a "fairly short period of time for a person to obtain counsel, explore his legal options, and file a motion to Intervene."); *Edwards*, 78 F.3d at 1000 (motions filed 37 and 47 days after notice of decree in question was published were timely); *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994) (motion filed within two months of learning interests were affected was timely). Moreover, Proposed Intervenors' motion falls comfortably within critical jurisdictional deadlines to appeal a final judgment under Federal Rule of Appellate Procedure 4. *See Ross v. Marshall*, 426 F.3d 745, 755 (5th Cir. 2005) ("A common example of post-judgment intervention that satisfies [the timeliness] criteria is intervention for the purpose of appealing a decision that the existing parties to a suit have decided not to pursue.").

### 2.    The Parties will not be prejudiced by this expeditious intervention

On the second *Stallworth* factor, "the relevant issue is not how much prejudice would result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest." 558 F.2d at 267. The *Stallworth* Court found no prejudice in a one-month delay. *Id.* Here, the Parties are in the same position as they were six weeks ago. No discovery has been taken, nor evidence produced, and there is no risk that materials relevant to the litigation have been altered or discarded. *See United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 n.14 (1977). The Parties "may have hoped" no one would defend the Final Rule, "but they had no legally cognizable expectation." *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 595 U.S. 267, 282 (2022).

13

### 3. Proposed Intervenors will suffer extreme prejudice absent intervention

The third factor looks to whether a would-be intervenor "may be seriously harmed if he is not permitted to intervene." *Stallworth*, 558 F.2d at 266. "[C]ritical" to this factor is adequacy of representation. *Lelsz v. Kavanagh*, 710 F.2d 1040, 1046 (5th Cir. 1983). Here, there has been no representation of Proposed Intervenors' position at all because the nominal defendants have made no effort to oppose Texas's challenge to the Final Rule.

### 4. Unusual circumstances call for intervention.

The final factor allows for consideration of any unusual circumstances warranting intervention. In *Stallworth* the Court recognized unusual circumstances where "the plaintiffs urged the district court to make it more difficult for the appellants to acquire information about the suit early on," such that the plaintiffs could not contest timeliness. 558 F.2d at 267. Here, the entire course of litigation is unusual—indeed, extraordinary—and favors intervention. Texas coordinated with the DOJ to secure the invalidation of federal regulations in circumvention of core APA requirements. These circumstances are highly unusual and demonstrate the necessity of intervention to protect the interests of Proposed Intervenors.

### B. Proposed Intervenors have substantial interests in this action.

Proposed Intervenors also have substantial interests in this case. The Fifth Circuit has found a wide array of economic, property, and other interests sufficient to satisfy the second Rule 24(a)(2) requirement. *See, e.g.*, *LULAC*, 659 F.3d at 421 (interest in right to vote for city council members was sufficient for intervention); *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970) (tax lien was sufficient interest); *City of Houston v. Am. Traffic Solutions, Inc.*, 668 F.3d 291 (5th Cir. 2012) (organizers of petition drive to amend city charter had specific interest in defending the amendment for intervention); *Brumfield v. Dodd*, 749 F.3d 339, 343 (5th Cir. 2014) (finding parents had an interest in a potential decree that interfered with education access for their

14

children, with "a potential bar on certain kinds of vouchers" and scholarships). The financial, public safety, and reliance interests asserted by the Proposed Intervenors, discussed at length above in the context of Proposed Intervenors' standing, are at least as substantial. See *supra* pp. 7–11.

### C. Proposed Intervenors' ability to protect their substantial interests will be impaired absent intervention.

For the third Rule 24(a)(2) factor, Intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 307 (5th Cir. 2022). This "impairment analysis mirrors the *Stallworth* factor three analysis." *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *9 (5th Cir. 2025). For the same reasons that Proposed Intervenors satisfy the third *Stallworth* factor, *supra* p. 14, they also satisfy the impairment requirement.

### D. Defendants have not represented Proposed Intervenors interests.

Defendants have not adequately represented the interests of Proposed Intervenors, which means the final Rule 24(a) factor is satisfied. The Fifth Circuit has found that even "substantial doubts" about a governmental defendant's interest in defending litigation is sufficient basis for allowing intervention. *American Traffic Solutions,* 668 F.3d at 294. *A fortiori*, there is not adequate representation when a government defendant has immediately capitulated. *See also Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1419 (10th Cir. 1984) (finding inadequate representation when "the government in effect conceded the case at the outset").

## III.    Intervention Would Not Be Futile

Consistent with Federal Rule of Civil Procedure 24(c), Proposed Intervenors have submitted, concurrently with their intervention motion, an Answer to the complaint that identifies a series of defenses, including affirmative defenses, that Proposed Intervenors intend to assert in contesting the Consent Judgment. These substantial defenses against Texas's challenge to the Final

Rule readily satisfy any applicable requirement that Proposed Intervenors demonstrate that the claims or defenses they intend to offer are not futile.[3] Specifically, Proposed Intervenors will show that the case must be dismissed for want of Article III jurisdiction; that the INA authorizes the Final Rule; that the consent decree improperly evades the APA's notice-and-comment requirements for rulemaking; and that the Consent Judgment is overbroad.

### A. The Court lacks jurisdiction over this action.

This case should be dismissed for want of subject-matter jurisdiction. Under bedrock Article III principles, a federal court may exercise jurisdiction only over a genuine "case or controversy." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). A true case or controversy requires parties with adverse legal interests who pursue "an honest and actual antagonistic assertion of rights" against each other. *Muskrat v. United States*, 219 U.S. 346, 359 (1911); *Chicago & G.T. Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892). When "both litigants desire precisely the same result," there is no case or controversy. *Moore v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 47, 48 (1971); *see also United States v. Johnson*, 319 U.S. 302, 305 (1943) ("Such a suit is collusive because it is not in any real sense adversary. It does not assume the 'honest and actual antagonistic assertion of rights' to be adjudicated—a safeguard essential to the integrity of the judicial process, and one which we have held to be indispensable to adjudication of constitutional questions by this Court.").

In *Pool v. City of Houston*, the Fifth Circuit recently applied that principle in holding that a district court lacked jurisdiction over a "faux dispute" where "all parties ha[d] agreed from the

---

[3] In *United States v. Texas*, 181 F.4th 548 (5th Cir. 2026), the Fifth Circuit affirmed a decision by this Court that denied an intervention motion on futility grounds. Proposed Intervenors here respectfully preserve the argument that Rule 24(a) does not authorize a full review of the merits in deciding a motion for intervention. *See, e.g.*, *In re N.Y.C. Policing During Summer 2020 Demonstrations*, 27 F.4th 792, 800 (2d Cir. 2022). But given the substantiality of Proposed Intervenors' defenses, the Court need not consider the issue.

beginning of this case that [the challenged statutory] provisions [were] unconstitutional." 87 F.4th 733, 734 (5th Cir. 2023). That is precisely the situation here. Even before the inception of this suit, the parties have not only agreed on all the relevant legal questions regarding the legality of the Final Rule, but they have both affirmatively sought precisely the same relief: a judgment declaring the Final Rule unlawful and vacating the Rule. *See* ECF No. 3, ¶¶ 10–13 (joint motion requesting this relief). That the parties jointly moved for this relief on the same day the suit was filed underscores its "friendly" nature. *Wellman*, 143 U.S. at 345. Indeed, the federal government all but invited this suit by issuing a public memorandum stating conclusively that it would not defend the Final Rule if it were challenged in litigation. Sirce E. Owen, Acting Dir., EOIR, *PM 25-29: Cancellation of Director's Memorandum 22-03*, at 8 (Apr. 18, 2025) ("EOIR could not—and will not— defend the [Final] Rule in good faith against legal challenge."). When Texas predictably took up that invitation, the parties had no divergent interests whatsoever.

DOJ's failure to vigorously press arguments it would ordinarily make when defending a federal rule illustrates the absence of a genuine case or controversy. For example, the federal government typically would contend that Texas's allegations of standing are insufficient. The theory of injury asserted in the Complaint (¶¶ 94–101) closely resembles the one rejected in *United States v. Texas*, 599 U.S. 670 (2023), but the government failed to raise the issue. Similarly, DOJ recognizes that its position in this case is inconsistent with the government's longstanding position regarding vacatur as a remedy, but it nonetheless "agree[d] not to pursue this position in this case." ECF No. 3, at 2 n.1. The most apparent explanation for these inconsistencies is that DOJ views its interest in obtaining vacatur of the final rule—the same interest asserted by Texas—as paramount. As a result, the case should be dismissed for want of a genuine controversy. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that when jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause"

17

(quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("[A] consent decree must spring from and serve to resolve a dispute within the court's subject-matter jurisdiction.").

### B.    The INA does not prohibit administrative closure

Proposed Intervenors will also offer substantial arguments that Texas is incorrect in arguing that administrative closure is generally unavailable as a matter of law. The INA affirmatively delegates the docket-management authority the Final Rule regularizes. The statute not only directs immigration judges to adjudicate removal cases and prescribes certain procedures for doing so, *see* INA § 240, 8 U.S.C. § 1229a, it also charges the Attorney General with supervising the immigration adjudication system, *see* INA § 103(g)(1), 8 U.S.C. § 1103(g)(1), and broadly authorizes him to "establish such regulations, . . . issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out" his responsibilities under the Act, INA § 103(g)(2), 8 U.S.C. § 1103(g)(2).  That authority comfortably encompasses procedural rules the Attorney General deems conducive to the fair and efficient functioning of the adjudication system—especially as to the many procedural matters the INA does not itself address. *See, e.g.*, *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 326–27 (5th Cir. 2024) ("[B]ecause Congress has given the BIA the responsibility to conduct its own proceedings, the agency should be free to fashion its own rules of procedure . . . ." (cleaned up)). Administrative closure is such a tool. Indeed, DOJ has recently argued that the Attorney General has broad authority to fashion the BIA's procedural rules pursuant to the INA. *See Amica Center for Immigrant Rights v. EOIR*, 1:26-cv-00696 (D.D.C. filed Mar. 4, 2026), ECF No. 26 at 4, 11.

In arguing otherwise, Texas relies heavily on *Hernandez-Serrano v. Garland*, 981 F.3d 459 (6th Cir. 2020), but that case decided only that regulations not at issue here did not confer upon

18

the BIA and IJs the general authority to administratively close cases. Those regulations authorize IJs and the BIA, respectively, to "take any action consistent with their authorities under the Act and regulations that is necessary or appropriate for the disposition" of their cases, 8 C.F.R. § 1003.10(b); *see id.* § 1003.1(d)(1)(ii) (nearly identical language for the BIA), and the court construed that phrase not to reach a general administrative closure power. *Hernandez-Serrano*, 981 F.3d at 462. At the same time, the Sixth Circuit recognized four regulations supplying "specific authorization for administrative closure under specific circumstances." *Id.* at 465 (citing 8 C.F.R. §§ 1214.3, 1245.13(d)(3)(i), 1245.15(p)(4), 1214.2(a)). The court's decision was thus confined, as a matter of regulatory interpretation, to whether administrative closure is "necessary or appropriate for the disposition" of a case under C.F.R. § 1003.10(b) and 8 C.F.R. § 1003.1(d)(1)(ii)—which rested on the court's view that administrative closure "is not itself a 'disposition'" of a case. *Id.* at 463. The court had no occasion to construe the INA or consider the Final Rule at issue here.

In fact, IJs and the BIA have employed administrative closure as a device to promote efficiency and reduce docket congestion since at least the 1980s, *see Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 116–17 (3d Cir. 2021); 88 Fed. Reg. 62242, 62243–46 (Sept. 8, 2023) (describing the history of administrative closure), and the Homeland Security Act of 2002 (HSA) confirmed the Attorney General's authority to continue it. In amending the INA, the HSA preserved for the Attorney General "such authorities and functions under [the INA] relating to the immigration and naturalization of [noncitizens] as were exercised by [EOIR], or by the Attorney General with respect to [EOIR]" before the Act. HSA § 1102, 116 Stat. 2135, 2274; INA § 103(g)(1), 8 U.S.C. § 1103(g)(2); *see* 6 U.S.C. § 521. Because EOIR adjudicators exercised administrative-closure authority prior to the HSA, the HSA confirms that the Attorney General may continue to provide for it. Indeed, the Attorney General issued the predecessors of the regulations cited with approval in *Hernandez-Serrano*—which direct IJs and the BIA to administratively close proceedings in

19

specified circumstances—well before 2002. *See* 8 C.F.R. § 245.13(d)(3)(i), *as added by* 63 Fed. Reg. 27823, 27829 (May 21, 1998) ; 8 C.F.R. § 245.15(p)(4), *as added by* 64 Fed. Reg. 25756, 25771 (May 12, 1999).

Finally, the Final Rule is consistent with 8 U.S.C. § 1229a.  Texas's contrary premise rests on the statute's direction that, "[a]t the conclusion of the proceeding[,] the immigration judge shall decide whether an alien is removable from the United States," and that the "determination . . . shall be based only on the evidence produced at the hearing." 8 U.S.C. § 1229a(c)(1)(A). But that provision describes the basis for the IJ's or BIA's decision once proceedings have concluded; it does not dictate the pace at which proceedings must move, set a deadline for their completion, or forbid pausing them. Administrative closure is not the conclusion of a case and does not substitute for a final removability determination under § 1229a. *See Romero v. Barr*, 937 F.3d 282, 287–88 (4th Cir. 2019) ("[T]he administrative closing of a case does not result in a final order" and "either party may reactivate the case by filing a motion to re-calendar" (citation omitted)); *Meza Morales v. Barr*, 973 F.3d 656, 660 (7th Cir. 2020) (Barrett, J.) (administrative closure and continuance are "two procedural devices that allow an immigration judge to temporarily set aside a pending case"); *Arcos Sanchez v. Att'y Gen.*, 997 F.3d 113, 117, 130 (3d Cir. 2021) (administrative closure "allows an IJ or the Board to 'temporarily pause removal proceedings' and place the case on hold," and "does not result in a final order" (citation omitted)).

Even under the Sixth Circuit's minority view that administrative closure "prevents the IJ from making any disposition in the case," *Hernandez-Serrano*, 981 F.3d at 462, it would pose no conflict with § 1229a(c)(1)(A). Section 1229a(c)(1)(A) operates "[a]t the conclusion of the proceeding" and requires that the IJ "decide whether an alien is removable from the United States" "based only on the evidence produced at the hearing." 8 U.S.C. § 1229a(c)(1)(A). But administrative closure means the proceeding has not yet concluded, so the directive in

20

§ 1229a(c)(1)(A)—on what basis the IJ must make a final determination—has not been triggered. The Final Rule, which authorizes administrative closure, therefore cannot be said to conflict with a statutory provision that operates at a different point in time.

Nor does anything in § 1229a prohibit such a pause. A continuance operates the same way—it suspends a proceeding without a fixed endpoint—and the Attorney General has long authorized immigration judges to grant continuances, *see* 8 C.F.R. § 1003.29, without anyone suggesting that § 1229a is thereby violated. And where Congress wished to require adjudication within a set time, it did so expressly, *see, e.g.*, 8 U.S.C. § 1158(d)(5)(A)(iii). It did not do so here.

<blockquote>

C.      **The consent decree improperly evades DOJ's rulemaking obligations under the APA.**
</blockquote>

The Consent Judgment here also flouts the APA. Under the APA, a federal regulation adopted through notice-and-comment rulemaking can be rescinded only through notice-and-comment rulemaking. *Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 101 (2015). That process affords affected parties the right to comment on the proposed rescission, 5 U.S.C. § 553(c), and to seek judicial review of the resulting rule, *see Dep't of Comm. v. New York*, 588 U.S. 752, 773–76 (2019). Here, instead, DOJ engaged in "rulemaking-by-collusive-acquiescence" that allowed it "to circumvent the usual and important requirement, under the Administrative Procedure Act, that a regulation originally promulgated using notice and comment . . . may only be repealed through notice and comment"). *Arizona v. City & Cnty. of S.F.*, 596 U.S. 763, 765–66 (2022) (Roberts, C.J., concurring, joined by Thomas, Alito, & Gorsuch, JJ.) (quoting *City & Cnty. of S.F. v. USCIS*, 992 F.3d 742, 744 (9th Cir. 2021) (Van Dyke, J., dissenting)); *see City & Cnty. of S.F.*, 992 F.3d at 744 (Van Dyke, J., dissenting) ("By denying the motion to intervene, we are sanctioning a collude-and-circumvent tactic by the parties, who clearly now share the same agenda."). DOJ neither defended the Final Rule nor rescinded it through the process the APA requires.

The consent judgment's form as a court order does not place it beyond that requirement. A consent decree is a hybrid—"both a settlement and an injunction"—and it is constrained from both sides. *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013). As a settlement, the decision to enter it is reviewable. *United States v. Carpenter*, 526 F.3d 1237, 1241 (9th Cir. 2008); *see also Exec. Bus. Media, Inc. v. U.S. Dep't of Defense*, 3 F.3d 759, 761–62 (4th Cir. 1993) (Attorney General's decision to settle a contract case was judicially reviewable where the claim alleged that the settlement "fail[ed] to comply with competitive bidding procedures"). However broad, the settlement power "does not include license to agree to settlement terms that would violate the civil laws governing the agency"; it "stops at the walls of illegality." *Carpenter*, 526 F.3d at 1242 (quoting *Exec. Bus. Media*, 3 F.3d at 762).

Nor does a settlement become immune from challenge merely because it has been incorporated into a consent judgment. District courts "may not approve a consent decree that 'conflicts with or violates' an applicable statute." *Conservation Nw.*, 715 F.3d at 1185 (quoting *Local No. 93, Int'l Ass'n of Firefighters*, 478 U.S. at 526). A court therefore "abuses its discretion when it enters a consent decree that permanently and substantially amends an agency rule that would have otherwise been subject to statutory rulemaking procedures." *Id.* at 1187. The consent judgment here does precisely that: it vacates the Final Rule and permanently enjoins its re-promulgation, ECF No. 5 ¶¶ 3–4—accomplishing by stipulated judgment what § 553 permits DOJ to do only through notice and comment, and foreclosing even that process going forward.[4] "If

---

[4] DOJ has itself held for decades that agencies "are not free in the course of litigation to … adopt a regulatory interpretation" that the APA requires be adopted "only through notice and comment rulemaking." Authority of the United States to Enter Settlements Limiting the Future Exercise of Executive Branch Discretion, 23 Op. O.L.C. 126, 137 n.8 (1999) . As the DOJ explained: the APA "generally limits the manner by which executive branch agencies may adopt, amend, or revise regulatory rules," "the terms of any settlement limiting the otherwise discretionary regulatory authority of an executive branch agency [must] conform to the terms of that Act." *Id.* at 129.

every lawsuit challenging agency action ended in a consent decree giving a private interest group plaintiff the relief it was seeking, the procedural safeguards of the APA would be eviscerated." *Am. Forest Res. Council v. Ashe*, 946 F. Supp. 2d 1, 27 (D.D.C. 2013). The result is to strip Proposed Intervenors of the rights the APA guarantees: to comment on the Rule's repeal, 5 U.S.C. § 553(c), and to obtain judicial review of it. *Dep't of Comm.*, 588 U.S. at 773–76.

### D.       The consent judgment exceeds the scope of permissible relief.

In addition, the consent judgment improperly grants relief beyond what the parties sought and exceeds this Court's equitable powers for at least two reasons. First, any invalid portions of the Final Rule must be severed from the remainder. Second, injunctive relief should not issue when vacatur remedies the plaintiff's asserted injuries.

**1.** The judgment is overbroad because it appears to vacate the entire Final Rule rather than severing any invalid parts from the remaining portions of the Final Rule. The Complaint exclusively challenges the legality of the portions of the Final Rule concerning administrative closure. *See* Compl. ¶¶ 114–19. The same is true of the parties' joint motion for entry of a consent judgment. *See* ECF No. 3, at ¶ 8. Yet the judgment entered by the Court could be read to vacate the Final Rule in its entirety, including portions that do not concern administrative closure. *See* ECF No. 5, at ¶ 4. Such broad relief could not be sustained because those portions of the Final Rule are severable from the portions concerning administrative closure.

A "two-prong inquiry" governs whether a regulation is severable: (1) "the intent of the agency" and (2) "whether the remainder of the regulation could function sensibly without the stricken provisions." *Texas v. United States*, 126 F.4th 392, 419 (5th Cir. 2025) (cleaned up). Both prongs favor severance.

As to the first prong, EOIR clearly indicated its intent when adopting the regulation. The express severability clause announces that intention in no uncertain terms: "To the extent that any

23

portion of this rule is stayed, enjoined, not implemented, or otherwise held invalid by a court, the Department intends for all other parts of the rule that are capable of operating in the absence of the specific portion that has been invalidated to remain in effect." 89 Fed. Reg. at 46786. That "severability clause . . . dispels any doubt about what the [agency] would have done if the" allegedly unlawful portions of the Final Rule "were subtracted." *Nat'l Ass'n of Mfrs. v. U.S. Sec. & Exch. Comm'n*, 105 F.4th 802, 816 (5th Cir. 2024).

As to the second prong, the portions of the rule concerning topics other than administrative closure can function sensibly without those relating to administrative closure. "For example, administrative closure and termination are two separate procedural tools that operate independently of each other," so termination "is fully capable of separate operation." 89 Fed. Reg. at 46786. Similarly, the Final Rule makes a number of changes to BIA procedures—"such as to briefing schedules, background checks, sua sponte reopening and reconsideration, and adjudication timelines, among others"—that function independently of administrative closure. *Id.* Nothing in the Complaint or the parties' motion for entry of a consent judgment suggests otherwise. Accordingly, any invalid portions of the Final Rule must be severed, and any judgment must leave in place the valid, remaining portions that function independently.

**2.** The consent judgment also improperly enjoins the federal government "from promulgating regulations that permit immigration judges the authority to administratively close removal proceedings without reaching the merits of a case absent an express statutory basis to do so." ECF No. 5, at ¶ 3. As an initial matter, no party has standing to request such sweeping relief, and any controversy arising from *possible* future rulemaking would not be ripe. That is because any harm Texas might assert is entirely speculative and contingent upon future events—including the course of any future rulemaking proceedings. "It is well accepted that the mere possibility of regulation fails to satisfy injury in fact," *Louisiana ex rel. Landry v. Biden*, 64 F.4th 674, 681 (5th

24

Cir. 2023) (quotation marks omitted), let alone a ripe controversy. *Cf.* Application for a Stay of the Injunction at 12-15, *Trump v. California*, No. 26A124 (U.S. filed July 27, 2026) (federal government advancing a similar argument in the Supreme Court in the context of a case brought by States). The injunction must "be limited to the inadequacy that produced the injury in fact," which extends (at most) to the Final Rule and not to hypothetical future rulemakings. *Lewis v. Casey*, 518 U.S. 343, 357 (1996).

Even setting aside that jurisdictional defect, the injunction is improper given the vacatur of the Final Rule. When a court concludes that an agency's rule is unlawful, vacatur—not an injunction—is the ordinary remedy. *Data Mktg. P'ship, LP v. U.S. Dep't of Lab.*, 45 F.4th 846, 859 (5th Cir. 2022); *see also Texas v. United States*, 50 F.4th 498, 528–29 (5th Cir. 2022) (describing the "meaningful differences between injunctions and vacatur"). If vacatur alone is "sufficient to redress [the plaintiff's] injury, no recourse to the additional and extraordinary relief of an injunction [is] warranted." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 166 (2010). Despite that admonition, no party here has shown, and the Court has not found, that such an injunction is necessary under the traditional equitable factors, including that it is necessary to remedy any injury to the plaintiff. *See* ECF No. 3, at ¶ 12; ECF No. 5, at ¶ 3. Simply put, no one faces irreparable harm from a hypothetical rulemaking that may or may not ever occur.

## CONCLUSION

Proposed Intervenors respectfully request this Court grant them leave to intervene for purposes of appeal.

August 7, 2026

Respectfully submitted,

/s/ Andrés Correa

Andrés Correa
Texas Bar No. 24076330
acorrea@lynnllp.com
Yaman Desai
Texas Bar No. 24101695
ydesai@lynnllp.com
Lynn Pinker Hurst & Schwegmann
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
(214) 292-3639

Ally Scher*
Simon C. Brewer*
Joshua M. Salzman*
Paul R.Q. Wolfson*
Brian D. Netter*
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
ascher@democracyforwad.org
sbrewer@democracyforward.org
jsalzman@democracyforward.org
pwolfson@democracyforward.org
bnetter@democracyofrward.org
(202) 448-9090

*Counsel for City of Baltimore, MD; City of
Columbus, OH; City of New Haven, CT; and
Centro Legal de la Raza*

*Motion for admission pro hac vice
forthcoming

26