**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

|  |  |
|---|---|
| State of Texas,<br><br>     *Plaintiff,*<br><br>v.<br><br>U.S. Department of Justice *et al.,*<br><br>     *Defendants,*<br><br>and<br><br>City of Baltimore, MD; City of Columbus, OH; City of New Haven, CT; and Centro Legal de la Raza,<br><br>     *Movant-Intervenors.* | Case No. 7:26-CV-00070-O |

**DECLARATION OF JUSTIN ELICKER (CITY OF NEW HAVEN)**

I, Justin Elicker, declare as follows:

1. I am the Mayor of the City of New Haven, Connecticut. I have served in this position since January 2020.

2. The City of New Haven (the "City" or "New Haven") is a municipal corporation existing by virtue of the laws of the State of Connecticut.

3. This declaration is based on my personal knowledge and on information provided to me in my official capacity as the Mayor of New Haven. I am over the age of eighteen and suffer from no legal incapacity.

4. Since its founding in 1638, New Haven has been seen worldwide as a safe haven for anyone, including immigrants, seeking escape from repression, persecution, tyranny, and economic ruin.

5.      To that end, in July 2020, I signed "An Executive Order to Affirm New Haven a Welcoming City" (the "Welcoming City Order"), to emphasize the City's commitment to the health and safety of all its residents, without regard to their immigration status, in order to achieve the City's goals of protecting life, liberty, and property. The Welcoming City Order underscored the American promise to welcome immigrants of the world, from wherever they come, and it directed City officers and employees in how to carry out that fundamental commitment in the exercise of their official duties.

5.      I am aware that on May 29, 2024, the Executive Office for Immigration Review published a new rule (the "Rule"), to take effect on July 29, 2024.  89 Fed. Reg. 46742 (May 29, 2024). Among other things, the Rule permitted immigration judges and the Board of Immigration Appeals to administratively close or terminate removal proceedings if certain conditions were met. I understand that the consent judgment in this case vacates the regulation and enjoins the U.S. Department of Justice from promulgating similar regulations in the future.

6.      For the City of New Haven, the ability of the immigration courts to administratively close or terminate immigration cases directly and concretely affects New Haven residents and City programs in several ways.

7      The collusive decision by the parties in this matter to end the Rule raises the specter of mass deportations on New Haven's immigrant community.  This will chill the willingness of resident immigrants to interact with the city and its resources, resulting in a less safe and healthy community for both citizens and non-citizens.

8.      For instance, fear of deportation makes it less likely that immigrants will seek medical attention until they are so ill that they have no choice but to go to the emergency room, where care is more expensive and imposes greater stress on New Haven's medical facilities. Further, untreated

diseases may be spread to and subsequently harm other citizens. And chronic diseases which can be readily diagnosed and treated when identified promptly may be left untreated, imposing greater costs upon the hospital and the City's Health Department when diagnosed later after complications and additional conditions have developed.

9.    To provide another example, mass deportations make it less likely that immigrants will report crimes, negatively impacting the City's police force's ability to investigate and resolve crimes and thereby harming public safety. Immigrants will be less likely to cooperate with law enforcement and prosecutors when they fear that once they have assisted the State they will be turned over to ICE. For example, the Alliance for Immigrant Survivors interviewed 170 immigration advocates and attorneys, and found that 75.6% of them said that immigrants have concerns about contacting the police, and that 70.3% of them reported concerns about going to court for a matter related to the abuser/offender, for fear that the abuser/offender will "report" them to ICE.

10.    New Haven is proud of its rich and diverse culture. Thus, losing the value of having people with different national origins and cultures, and those people becoming fearful of engaging with the City will impact many aspects of daily life, including the benefit of listening to and learning different languages, and appreciating other cultural differences such as customs and cuisine. These cultures are represented all over New Haven in different businesses that provide jobs for residents, attract people outside New Haven, and generate revenue for the City.

11.    Deportations of immigrant parents with children who are citizens will have a catastrophic effect on child development and city resources.    The children will be left homeless and their education and overall development stifled.    Moreover, New Haven will be required to use additional unplanned resources to house, shelter, and educate these children.

12. Mass deportations will leave immigrants feeling much less safe and secure if they seek out the judicial system for any court-related reason out of fear that ICE agents will stake out the courthouse to arrest them.

13. Increased deportations threaten New Haven's workforce, where immigrants perform crucial services in many areas, including construction, maintenance, and food services, resulting in greater costs to all.

14. The collusive decision by Texas and the Department of Justice to end the Rule will result in the loss of many people who positively contribute to the rich tableau that is New Haven.

Executed this __7th__ day of August, 2026.

Justin Elicker
Mayor of the City of New Haven