**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:26-CV-00070-O** |
| | § | |
| **U.S. DEPARTMENT OF JUSTICE, ET AL.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

## OPINION & ORDER

Before the Court are the Emergency Motion to Intervene by City of Baltimore, MD; City of Columbus, OH; City of New Haven, CT; and Centro Legal De La Raza (collectively, "Proposed Intervenors") (ECF No. 6); the State of Texas's ("Plaintiff") Response (ECF No. 19); Proposed Intervenors Reply (ECF No. 22); and Defendants' Nunc Pro Tunc Motion and Response to the Court's August 11, 2026 Order (ECF No. 21). Having considered the Motions, briefing, and relevant law, the Court **DENIES** the Motion to Intervene (ECF No. 6) for the reasons set forth below. The Court **GRANTS** Defendants' Nunc Pro Tunc Motion (ECF No. 21).

### I. BACKGROUND[1]

Immigration judges have the ability to suspend removal proceedings in certain circumstances—this is known as administrative closure. *See, e.g.*, 8 C.F.R. § 1003.18(c) (defining administrative closure as the "temporary suspension of a case"). On May 29, 2024, the Department of Justice promulgated the final rule titled *Efficient Case and Docket Management in Immigration Proceedings*, 89 Fed. Reg. 46,742 (May 29, 2024) (the "Final Rule"). The Final Rule authorized,

[1] Unless otherwise indicated, the facts are taken from the parties' briefing.

*inter alia*, immigration judges and the Board of Immigration Appeals to administratively close proceedings under a totality-of-the-circumstances standard, including when no collateral petition, application, or other proceeding was pending. *Id.* at 46,792. It also addressed termination, briefing schedules, background checks, and *sua sponte* reopening. *Id.* at 46,743, 46,766–67.

In April 2025, the Acting Director of the Executive Office for Immigration Review ("EOIR") issued Policy Memorandum 25-29, which stated that EOIR could not and would not defend the Final Rule in good faith against legal challenge. EXEC. OFF. FOR IMMIGRATION REV., U.S. DEP'T OF JUST., Policy Memorandum 25-29: Cancellation of Director's Memorandum 22-03 at 8 (Apr. 18, 2025). The memorandum did not itself vacate or suspend the Rule. When Plaintiff filed this action on June 22, 2026, the complaint alleged that the Final Rule "remain[ed] in full legal force and continue[d] to bind EOIR adjudicators."[2]

Plaintiff and Defendants filed a Joint Motion for Entry of Consent Judgment the same day.[3] The Court then entered an Order and Final Judgment under Federal Rule of Civil Procedure 58(a) ("Consent Judgment").[4] The judgment declared the Final Rule contrary to law, vacated it, permanently enjoined its enforcement, imposed specified prospective injunctive relief concerning future administrative-closure regulations, recorded the parties' waiver of appeal, and dismissed all remaining requests for relief without prejudice.[5] On August 7, 2026, the City of Baltimore, the City of Columbus, the City of New Haven, ("Municipal Intervenors") and Centro Legal de la Raza ("Centro Legal") moved to intervene as defendants under Rule 24(a).[6] Their motion states that they seek intervention for the purpose of appealing the Consent Judgment because the existing

[2] Compl. ¶ 57, ECF No. 1.
[3] Joint Motion for Entry of Consent Judgment, ECF No. 3.
[4] Order and Judgment, ECF No. 5.
[5] *Id.*
[6] Mot. Intervene, ECF No. 6.

parties will not appeal.[7] Plaintiff filed a response and Defendants moved for the Court to accept Defendants' position opposing intervention nunc pro tunc.[8] The Motion has been briefed and is now ripe for the Court's review.

## II. LEGLA STANDARD

### A. Article III Standing

Federal courts are courts of limited jurisdiction and must have "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "Under the Constitution's Article III cases and controversies requirement, a plaintiff must establish standing to sue. Standing requires: (1) an injury in fact, (2) a sufficient 'causal connection between the injury and the conduct complained of' and (3) a likelihood that the injury will be redressed by a favorable decision." *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992); U.S. CONST. art. III, § 2. The injury cannot be merely "conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). Causation requires that the injury "fairly can be traced to the challenged action of the defendant" rather than to "the independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976).

When a motion to intervene is opposed and the proposed pleading advances defenses no existing party asserts, the Court must first determine whether the proposed intervention is futile. *United States v. Texas*, 181 F.4th 548, 553–54 (5th Cir. 2026). The Rule 12(b)(6) standard applies: factual allegations are assumed true, the pleading is construed liberally. *Id.* Futility is a threshold inquiry that precedes the factors in Rule 24(a) and (b), and it applies to proposed defense-side intervenors. *Id.* An intervenor that alone seeks appellate relief must independently demonstrate a

---

[7] *Id.* at 1.

[8] *See generally* Defs.' Mot. Nunc Pro Tunc, ECF No. 21.

concrete and particularized injury that is fairly traceable to the judgment and likely to be redressed by reversal. *Virginia House of Delegates v. Bethune-Hil*, 587 U.S. 587 U.S. 658, 663–64 (2019).

### B. Intervention as of Right

Federal Rule of Civil Procedure 24(a) requires that a party be permitted to intervene in an action if it shows by "timely motion" that (a) "it has a protectable 'interest' in the action," (b) "the 'disposing of the action' could 'impair' its ability to protect that interest," and (c) "existing parties do not 'adequately represent' that interest." *Louisiana v. Burgum*, 132 F.4th 918, 922 (5th Cir. 2025) (quoting Fed. R. Civ. P. 24(a)(2)). "Failure to satisfy any one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co. v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007). "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc . v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).

## III. ANALYSIS

Before considering the merits of the Proposed Intervenors' arguments, the Court has an obligation to ensure itself of the litigants' standing. *Texas v. United States (DACA)*, 126 F.4th 392, 405 (5th Cir. 2025). Under Article III of the United States Constitution, a party must demonstrate (1) injury in fact, (2) causation, and (3) redressability. *Lujan*, 504 U.S. at 561. Where, as here, the Intervenors are not themselves "the object of the government action or inaction [their] [] standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Id.* at 562 (quoting *Allen v. Wright,* 468 U.S. 737, 758 (1984)). Proposed Intervenors assert several different grounds upon which to establish injury. The Court address each in turn.

First, Municipal Intervenors argue that the Consent Judgment extinguishes identifiable revenue streams in the form of tax revenue.[9] The argument proceeds thus: aliens residing within Municipal Intervenors' jurisdiction work legally while their applications are pending. Those aliens now face reopened removal cases as those matters are recalendared resulting in Municipal Intervenors losing specific taxpayer revenue.[10] Plaintiff responds that Municipal Intervenors' theory of injury is too attenuated as it requires each of the following: "recalendaring; an adverse merits decision; a final removal order; execution of that order; the individual's continued residence and taxable employment in the same city absent removal; and a resulting net revenue loss."[11] The Court agrees with Plaintiff.

The Municipal Intervenors' "loss of general tax revenues as an indirect result of federal policy is not a cognizable injury in fact." *El Paso Cnty., Texas v. Trump*, 982 F.3d 332, 339 (5th Cir. 2020). To succeed under their theory, the Municipal Intervenors must show "a direct injury in the form of a loss of specific tax revenues," *Wyoming v. Oklahoma*, 502 U.S. 437, 448 (1992), because "the reality of federal expenditure is that 'virtually all federal policies' will have 'unavoidable economic repercussions[,]'" *El Paso*, 982 F.3d at 339 (quoting *Pennsylvania v. Kleppe*, 533 F.2d 668, 672 (D.C. Cir. 1976)). Crucially, an injury is not cognizable when an "independent act of a third party was a necessary condition of the harm's occurrence, and it was uncertain whether the third party would take the required step." *Texas v. United States ("DAPA")*, 809 F.3d 134, 160 n.68 (5th Cir. 2015).

Here, Municipal Intervenors' injuries depend on the enforcement decisions of federal officials, over which neither this Court nor the Proposed Intervenors have any control. Setting

[9] Br. Supp. Mot. Intervene 7, ECF No. 6-1.
[10] *Id.*
[11] Resp. 10, ECF No. 19.

aside the question of whether recalendaring is a certainty, at most, the direct consequence of the Consent Judgment is that cases that are currently closed may be recalendared. Whether an individual, tax-paying alien is ultimately deported requires another branch of government to adjudicate removal and exercise discretion to enforce any resulting removal order. *Arizona v. United States*, 567 U.S. 387, 396 (2012) ("A principal feature of the removal system is the broad discretion exercised by immigration officials.").[12] Such a causal chain "is too 'attenuated' to support standing" because it hinges on the independent acts of third parties and it is uncertain whether those actions will result in a loss of tax revenue. *DACA*, 126 F.4th at 409 (quoting *United States v. Texas*, 599 U.S. 670, 680 (2023)).

Additionally, Municipal Intervenors simply have not alleged or pointed to any evidence in the record that any of the individuals whose cases would be recalendared as a result of the Consent Judgement are currently working, let alone paying taxes. They have not shown that such an already strained chain of causation—entirely dependent on the decisions of third parties—would actually result in a loss of tax revenue. Accordingly, Municipal Intervenors' potential loss of tax revenue falls short of the fairly traceable and cognizable harm required to show standing.[13]

Second, Baltimore contends that it will be injured by the destruction of the value of public money already spent on removal defense through Safe City Baltimore, and by the exhaustion of

---

[12] The Court notes that a final order of removal also does not necessarily result in deportation—adding another link to an already tenuous chain of causation. *See* Kathleen Bush-Joseph, et al., *ICE Arrests and Deportations from the U.S. Interior*, MIGRATION POLICY INSTITUTE (February 2025) https://www.migrationpolicy.org/explainer/ice-arrests-deportations-us-interior ("Just because a person is ordered removed does not always mean the deportation is carried out. About 1.5 million noncitizens have outstanding removal orders[.]").

[13] Moreover, courts are less likely to find standing to challenge a sovereign's policy when the injury could be cured by a change in tax policy. *See e.g., State of Fla. v. Mellon*, 273 U.S. 12 (1927) ("If, as alleged, the supposed withdrawal of property will diminish the revenues of the state, non constat that the deficiency cannot readily be made up by an increased rate of taxation.").

fixed-award legal-service contracts.[14] This injury is wholly self-inflicted. *See Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016) (holding that self-inflicted litigation-funding injury was not fairly traceable to the defendant's conduct). Here, no one forced Baltimore to spend money litigating immigration proceedings. *Cf. Texas v. Biden*, 20 F.4th 928, 969 (5th Cir.2021) ("Federal law affirmatively requires the States to make some of those expenditures.") *rev'd. on other grounds Biden v. Texas*, 597 U.S. 785 (2022). The fact that some proceedings may have to be reopened is only traceable to Baltimore's initial decision to expend funds on those proceedings. *Id.* at 621. Such voluntary decisions by governmental bodies cannot be a cognizable injury when the damage inflicted is by its own hand. *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) (holding that fiscal harm to plaintiff state due to its own statutory funding mandate was "self-inflicted" and not "traceable to the challenged conduct of the defendant.").

Third, Municipal Intervenors assert that the Consent Judgment impairs their law enforcement operations by discouraging crime victims from cooperating with police, as incentivized by U visas. 8 U.S.C. § 1101(a)(15)(U). But the Consent Judgment does not affect the U visa certification process, and it remains available to aliens who face active removal proceedings. Municipal Intervenors suggestion that unlawful immigrants with pending removal cases will not submit U visa applications, even when eligible, is pure speculation. Nothing before the Court indicates that the Consent Judgment has or will result in cases failing and the perpetrators going unprosecuted. The asserted injury depends on independent choices by aliens, immigration adjudicators, prosecutors, witnesses, and federal enforcement officials. Such speculative, contingent harm is insufficient to confer standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

---

[14] Br. Supp. Mot. Intervene 7, ECF No. 6-1.

Finally, Centro Legal alleges that recalendaring or recommencement of its clients' removal proceedings will require additional legal work, strain fixed funding, reduce its ability to accept new matters, and potentially affect referral relationships.[15] The Fifth Circuit has forcefully explained that "A legal-services organization cannot have Article III standing merely because a new law or regulation requires it to understand the legal change, to adjust resources in response, or to increase the degree or scope of legal representation for its current or prospective clients who may be adversely affected." *United States v. Texas ("Texas S.B. 4")*, 173 F.4th 659, 666 (5th Cir. 2026). Centro Legal's theory of standing is thus explicitly foreclosed by Fifth Circuit precedent.

Centro Legal attempts to circumvent *Texas S.B. 4* by asserting that "it does not merely claim that it must divert its resources" but that the "Consent Judgment will force it to perform legal work that its grants do not cover and will erase the value of legal work it already was paid to perform."[16] Such a contention is mere sophistry. At bottom, Centro Legal's alleged injury is that it will be required to do more work if its client's cases get reopened, such that it will be unable to take on new work and may lose out on future referrals. This is precisely the logic that the Fifth Circuit rejected. *See Texas S.B. 4*, 173 F.4th at 666 (finding no standing where a legal services organization was required "to increase the degree or scope of legal representation for its current or prospective clients"); *see also Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 394, 395 (2024) (rejecting the proposition that "standing exists when an organization diverts its resources in response to a defendant's actions" and noting that the argument that the government has "'impaired [organizations'] ability to provide services and achieve their organizational missions' . . . does not work to demonstrate standing"). Accordingly, Centro Legal fails to articulate a basis for Article III standing.

---

[15] *Id.* at 9–11.
[16] Reply 4–5, ECF No. 22.

## IV. CONCLUSION

Accordingly, none of the Proposed Intervenors have standing under Article III rendering intervention futile. The Motion to Intervene (ECF No. 6) is therefore **DENIED**.

**SO ORDERED** on this **21st day** of **August, 2026.**

Reed O'Connor
CHIEF UNITED STATES DISTRICT JUDGE